THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROCHESTER RAILWAY & LIGHT COMPANY, Defendant.

(County Court, Monroe County, May, 1908.)

Corporations — Liability for torts and criminal liability — Criminal liability — For manslaughter.

 A corporation cannot commit the crime of manslaughter, and a demurrer to an indictment of a corporation for that crime should be sustained.

DEMURRER to indictment.

Charles B. Bechtold, assistant district attorney, for the people.

Daniel M. Beach, for the defendant.

BARHITE, J.   The defendant was indicted by the grand jury for the crime of manslaughter in the second degree, it

being alleged that one Ernie Oppenheimer was killed by the culpable negligence of the defendant, the particulars of the charge being that a water heater was installed in the home of the deceased by the defendant, and that a proper vent to the open air from the heater for the escape of obnoxious and dangerous gases was not provided, and that the gases furnished by the defendant for use in the heater were of a kind dangerous to human life and health.

The defendant is a corporation, and the sole question presented for the consideration of the court is whether a corporation can commit the crime of manslaughter. The claim is made that the definition of that crime in the Penal Code necessarily excludes an artificial being, existing only by permission of law, from the operation of the statute, and, further, that the crime of manslaughter is of such a character that a corporation cannot be guilty of committing it. The question is exceedingly important and is one of difficulty, not alone on account of the language used in the Code, but because, so far as the briefs of counsel indicate or personal research discloses, the courts of this State furnish no precedent.

Homicide is defined in the Penal Code as " the killing of one human being by the act, procurement or omission of another." Homicide is further defined to be either: First, murder; Second, manslaughter; Third, excusable homicide; or, Fourth, justifiable homicide. Manslaughter is one of the different kinds of homicide. If homicide is the killing of one human being by another " human being," and manslaughter is one kind of homicide, then only a human being can commit that crime. Obviously a corporation is not and cannot be a human being. If the words quoted were the only ones that need construction the task would be simple; but the Code, in defining manslaughter, uses the term " person " and not " human being." This is the definition:

" Such homicide is manslaughter in the second degree when committed without a design to effect death either:

" 1. By a person committing or attempting to commit, etc., or

" 2. In the heat of passion, etc., or

" 3. By any act, procurement or culpable negligence of any person which, according to the provisions of this chapter, does not constitute the crime of murder in the first or second degree nor manslaughter in the first degree."

The indictment is based upon the third subdivision, and the learned district attorney contends that the word " person " must have its usual broad legal signification, and must, therefore, include not only natural but artificial beings. If his contention is correct the indictment is justified.

When we consider the active part which corporations take. in the affairs of the community, and how largely the great business enterprises of the day are owned and controlled by these legal but artificial beings, and how often the agents and employees of such corporations are charged with crime and indicted for acts which result in the death of human beings and committed while engaged in the business of the corporation, it is significant that the district attorney and courts of this State charged with the interpretation of the criminal law have not seen fit to lay the crime directly at the door of the corporation itself, but have apparently assumed that it was not chargeable with crimes which include the element of violence to the person.

In construing the law under consideration it should be remembered that the different sections of the Penal Code are to be construed together and effect given to each, if possible.

In People v. Moran, 123 N. Y. 254, the court, in referring to the enactment of the Penal Code, says: " The design was to codify the criminal laws of the State and embrace them all in a single enactment under a uniform system."

In Smith v. People, 47 N. Y. 330, we find this language: " One part of an act of the legislature may be referred to in aid of the interpretation of other parts of the same act;" and, again, " Statutes enacted at the same session of the legislature should receive construction, if possible, which will give effect to each. * * * Each is supposed to speak the mind of the same legislature, and the words used in each should be qualified and restricted, if necessary, in

their construction and effect, so as to give validity and effect to every other act passed at the same session."

We should also bear in mind that familiar principle that penal statutes are to be strictly construed — not so strictly as to do violence to the intention of the legislation, which is the main thing to be followed; but the alleged guilty person should have the benefit of the doubt. Juries in criminal actions are charged that they must not convict unless the evidence convinces them, beyond a reasonable doubt, of the guilt of the defendant. Consistency requires that the same rule should be followed in the interpretation of the criminal law. To use the language of the court in Matter of McNulty, 77 Col. 164, " Constructive crimes — crimes built up by courts with the aid of inferences, implication and strained interpretation — are repugnant to the spirit and letter of English and American criminal law."

Under the foregoing principle, how should the law defining manslaughter in the second degree be construed?

The Statutory Construction Law provides that the term " person " includes a corporation; but not where " the context of the language construed, or other provisions of law indicate that a different meaning or application was intended." Under the Code one cannot commit the crime of manslaughter unless he also is guilty of homicide. Homicide is the general term, manslaughter the specific term. The greater includes the less. If we restrict the meaning of the term " any person," as used in the definition of manslaughter in the second degree, and say that it refers to a " natural person," then the definition of homicide and manslaughter are consistent and harmonious. If, however, we hold that the term " any person " must have its broadest definition and includes corporations, then the defendant here is charged with committing manslaughter, which is one kind of homicide; but it is incapable of committing any kind of homicide because, under the definition, corporations are incapable of committing that crime. We certainly cannot violate all the rules of construction of the English language and say that the word " another," in the definition of homicide, does not refer to the term " human being," but to any

word we may choose to place after it.  An examination of the other sections of the Code, which enumerates the various acts which constitute murder in one of its degrees, or manslaughter in one of its degrees, shows that the word "person" is frequently used in such connection; that it can only refer to a natural person.  For illustration, a person who willfully interferes with a railroad track and thereby causes the death of a human being is guilty of murder in the first degree.  § 183-A.

A person who fights a duel and causes the death of another person is guilty of murder in the second degree. § 185.

A person who kills another in the heat of passion is guilty of manslaughter.  § 189.

In some of these sections the victim of the crime is referred to as a "person," meaning necessarily a natural person.

The Criminal Code of Canada is almost identical with the Penal Code of this State in its definition of homicide and manslaughter.  Section 218 of the Criminal Code of that province says: "Homicide is the killing of a human being by another, directly or indirectly, by any means whatsoever." Section 220 provides: "Homicide may be either culpable or not culpable.  Culpable homicide is either murder or manslaughter."

In Queen v. Union Colliery Co., 3 Can. C. C. 523, we find the Code construed in these words: "As section 230 defines manslaughter to be culpable homicide not amounting to murder, and section 218 defines homicide to be the killing of a human being by another, a corporation cannot be convicted of such an offense."

In Queen v. Great West Laundry Co., 3 Can. C. C. 514, the ·defendant was indicted for manslaughter in causing the death of one of its employees by failing to properly protect its machines.  The court, in considering a demurrer, uses this language: "The opinion I have come to after consideration is that there is no authority that would justify me in holding that an indictment will lie against a corporation for manslaughter."

Leaving the domain of interpretation of a particular statute, let us examine the question whether, as a general proposition of law, corporations are subject to indictment for crimes. In the earlier days of judicial opinion this question was generally answered in the negative. Gradually, however, as corporations began to take so important a part in the affairs of civilized mankind, the former rule was relaxed to meet the justice and the necessities of the situation, until, at the present time, it is quite generally conceded as a legal proposition that corporations are subject to the criminal laws the same as individuals, except for those crimes which involve the mental element or the element of personal violence to the victim. Indeed, in these latter classes of cases, there are intimations from judicial sources that corporations should be held to the same strict accountability as natural persons; although such decisions, so far as we can ascertain, have never been actually made.

In Clark on Corporations, 2 Col. 199 (a book dated as late as 1907), the author, after referring to the rule that in earlier times a corporation was not subject to indictment, proceeds as follows: " The great weight of modern authority, however, is against this position and to the effect that an indictment will lie against a corporation for misfeasance, as well as for nonfeasance, provided the offense involves no mental element nor element of personal violence." And, again, at page 200, the same author remarks: " There are no cases thus far in which a corporation has been held liable criminally for malicious wrongs or for wrongs involving the element of personal violence. On the contrary, actual authority so far as it goes is against any such doctrine."

The head-note in Commonwealth v. P. St. Pas. R. Co., 24 Penna. Co. Ct. Rep. 25, reads as follows: " While a corporation is liable civilly for assault and battery committed by an employee, it cannot be indicted criminally for assault and battery or manslaughter." In American and English Encyclopedia of Law (vol. 7, p. 844) is found this statement: " So far as actual authority goes, however, the doctrine is limited to torts and a corporation cannot be in-

dicted for offenses involving the element of malice or criminal intent." Again (at p. 145): "While a corporation could not be indicted for murder or manslaughter."

In Commonwealth v. Proprietors of New Bedford Bridge, 2 Gray, 339, the Supreme Court of Massachusetts lays down the doctrine that corporations cannot be indicted for offenses which derive their criminality from evil intention, or which consist in a violation of those social duties which appertain to men and subjects. They cannot be guilty of treason, felony, perjury or offenses against the person.

The Supreme Court of the United States in Denver v. Harris, 122 U. S. 597, says: "The result of the modern cases is that a corporation is liable *civiliter* for torts committed by its servants or agents."

It is true the court does not say that corporations are not liable *criminaliter,* and such a finding was not necessary to the decision of the case cited; but, when we consider the careful use of language to which the distinguished members of that court are accustomed, it is significant that the word *civiliter* was used and would seem to indicate in the mind of the jurist who used the words quoted, an intention either to not pass upon the criminal liability of corporations or to indicate a limitation upon their liability.

When we consider the great number of corporations with which the public authorities now have to deal, and how intimately and extensively they come into contact with our citizens in their operations, it might be well to place the criminal liability of natural and of artificial persons on the same plane, except in those special cases in which it would be impossible from the very nature of the crime. This, however, is a question for the Legislature and not for the courts. If the present law may be so construed as to accomplish the same result, yet it is more seemly that trial courts should keep well within the bounds of the present recognized legal principles and not stray outside until those of higher judicial authority have led the way.

There is another circumstance which may properly be taken into consideration in the decision of this demurrer. It was conceded upon the argument by the district attorney

23

and the counsel for the defendant that the trial of this action will be very expensive, both to the people and the defendant, and will require several weeks of the time of the court. Over thirty witnesses appeared before the grand jury, and this number will be largely increased upon the trial by the additional witnesses to be called by the people and those called by the defendant. While expense should not stand in the way of the prosecution of those guilty of crime, yet, when a question so vitally important and one, if the views expressed above are correct, absolutely decisive of the case, may be finally settled, if the district attorney shall be advised to present the matter to the Appellate Courts, in a comparatively short time and at slight expense, that plan should be adopted which may eventually save the cost of the trial. If the demurrer is overruled, the decision cannot be directly reviewed; but, if sustained, the ruling of the higher courts may be obtained at once. This course can injure neither the people nor the defendant.

In view of the construction which we feel must be placed upon the language of the Penal Code, and in view of the fact that the parties should have an opportunity to first settle the question whether the defendant can be guilty of the crime with which it is charged, the demurrer should be sustained.

The demurrer is allowed and judgment directed for the defendant, and an order to that effect may be entered.